J-S55045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: C.R., JR., A    :   IN THE SUPERIOR COURT OF
MINOR                         :      PENNSYLVANIA
                                     :
                                     :
APPEAL OF: A.C., MOTHER       :
                                     :
                                     :
                                     :
                                     :    No. 439 EDA 2016

Appeal from the Decree January 6, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000080-2015,
CP-51-DP-0000875-2013

BEFORE:  LAZARUS, J., DUBOW, J., STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:       **FILED SEPTEMBER 09, 2016**

Appellant, A.C. ("Mother"), appeals from the decree entered in the Court of Common Pleas of Philadelphia County by the Honorable Judge Jonathan Q. Irvine, involuntarily terminating the parental rights of Mother to her son, C.R., Jr. (born in October of 2011) ("Child"), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

On August 31, 2012, Mother was arrested for the unauthorized use of an automobile and related charges.  The trial court deferred Mother's

---

* Former Justice specially assigned to the Superior Court.

[1] On October 29, 2015, the parental rights of C.R. ("Father") with respect to Child were terminated.  Father is not a party to this appeal, nor did he file a separate appeal.

delinquent adjudication and placed her on interim probation. On April 10, 2013, the trial court was notified that Mother had tested positive for marijuana. As a result, the trial court adjudicated Mother delinquent and placed her in custody at the Youth Study Center. Further, the trial court notified the Department of Human Services ("DHS") of Mother's adjudications and ordered DHS to investigate Mother's care of Child and file a dependency petition if necessary.

Thereafter, DHS personnel visited the home of Child's maternal grandmother, Y.P.-W. ("Maternal Grandmother"), the home where Child and Mother resided. After discovering Maternal Grandmother had been the perpetrator of abuse in four indicated Child Protective Service ("CPS") reports and did not pass Pennsylvania Child Abuse clearances, DHS deemed her home to be an inappropriate place for Child to reside. Following a hearing held on May 7, 2013, Child was adjudicated dependent and committed to the custody of DHS. On June 25, 2013, DHS created a Family Service Plan ("FSP") for Mother. Mother's FSP goals were to: (1) maintain visitation with Child; (2) obtain appropriate housing; (3) obtain employment; (4) complete mental health treatment; and (5) obtain a GED.

On January 26, 2015, DHS filed a termination petition, seeking to terminate Mother's parental rights to Child pursuant to Section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b). The trial court held a termination hearing on January 6,

2016. At the hearing, Tracey Allen, a Community Umbrella Agency ("CUA") caseworker, and Mother testified. By a decree dated January 6, 2016, the trial court terminated Mother's parental rights to Child and changed Child's goal to adoption. On February 4, 2016, Mother filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises the following issues on appeal:

1. Did the [trial c]ourt make an error in finding that [DHS] sustained its burden regarding the requirements of 23 Pa. C.S.A. § 2511(b) and made reasonable efforts to assist Mother in being reunited with [C]hild? [2]

2. Did the [trial court] make an error in finding that [DHS] provided credible evidence on the issue of parent-child bonding and attachment?

Mother's Brief at 3.[3]

Our standard of review regarding orders terminating parental rights is as follows:

_____

[2] While Mother's first issue in her statement of questions involved cites Section 2511(b) of the Adoption Act, it is apparent that she intended to challenge DHS's grounds for termination under Section 2511(a)(1). Both Mother's 1925(b) statement and her appellate brief contain challenges pursuant to Section 2511(a)(1). Therefore, we deem Mother's Section 2511(a)(1) arguments to be preserved for our review.

[3] On appeal, Mother does not challenge the trial court's decision to change the goal to adoption. Therefore, we find that issue waived. *See Krebs v. United Refining Co. of Pennsylvania*, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that any issue not set forth in or suggested by a concise statement of errors complained of on appeal and the statement of questions involved section in the appellate brief is deemed waived).

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa.Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003).

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re*

***B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004).

Herein, we review the termination order pursuant to Section 2511(a)(1) and (b), which provide as follows:

**§ 2511.  Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

More specifically, this Court has provided the following with regard to the aforementioned statutory requirements:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to

relinquish parental claim to a child or a refusal or failure to perform parental duties. *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa.Super. 2006). In addition,

> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

> *In re Adoption of Charles E.D.M.*, 550 Pa. 595, 708 A.2d 88, 91 (1998).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

> *Id*. at 92 (citation omitted).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," our courts have emphasized that:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

In her brief, Mother contends that the termination of her parental rights was improper as DHS did not make reasonable efforts to reunify her with Child. Mother's Brief, at 7. Further, Mother argues that "[e]conomic issues are the primary factors involved in the termination of [Child's] paternal rights." *Id.* at 10. Mother avers that her parental rights should not be terminated "because she is poor, unemployed and needs more education." *Id.* In addition, Mother also argues that her age was a factor in her being unable to meet her FSP goals as she was seventeen when Child was born.

Upon our review of the record, we find the trial court properly concluded that DHS proved sufficient grounds for the termination of Mother's parental rights pursuant to Section 2511(a)(1). In reaching its decision, the trial court found that "it is clear that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, … [M]other refused or failed to perform her parental duties." Trial Court Opinion (T.C.O.), 3/15/16, at 3 (unpaginated). Specifically, the trial court observed that Mother had failed to meet several of her established goals:

> [M]other does not have appropriate[] housing. [M]other has been transient throughout the life of the case. The social worker testified that housing assistance was provided to [M]other throughout the case, however, she did not follow through and NEVER obtained appropriate housing. Furthermore, [M]other did not obtain employment. Moreover, [M]other did not consistently attend mental health treatment and has never successfully completely mental health treatment. Lastly, [M]other did not complete her GED.

*Id.* (internal citations omitted). At the time of the termination hearing, Child had been in DHS custody for thirty-two months.

While Mother asserts she was prevented from completing her FSP goals by her economic status and her age, Mother fails to acknowledge her lack of initiative in utilizing available resources to work towards reunification with Child. For example, with regard to housing, Ms. Allen testified that the Philadelphia County Office of Children, Youth, and Family Services ("CYF") provided Mother with access to assistance from Public Health Management Corporation ("PHMC"), which "helps families with down payments for

security deposit, first and last month rent." Notes of Testimony (N.T.), 1/6/16, at 29. Ms. Allen stated that families find housing and give their lease to CYF, who completes the application and forwards it to PHMC. Ms. Allen shared that CYF could not help Mother obtain housing because she never started the process.

In addition, while Mother depicts herself as a juvenile unable to comply with her family service plan, the fact that she is a young mother does not exempt her from the need to fulfill her parental responsibilities. At the termination hearing, Mother admitted that she did not start working until nearly a year after the termination petition was filed, at which point she was nearly twenty-one years old.

We acknowledge that Mother complied with her goal of maintaining visitation with Child, but was never permitted to have unsupervised visits with Child. Opining that Mother has not shown that she can adequately care for Child, Ms. Allen observed that Mother does not have patience with Child and cannot redirect Child as he does not listen to Mother. Ms. Allen also noted that often times, Mother does not engage with Child but instead uses her cell phone during her visits. Moreover, Mother admits she has not sought regular mental health treatment as required by her family service plan, but argues her mental health issues do not warrant the termination of her parental rights. Ms. Allen testified that Mother suffers from "major depressive disorder, anxiety disorder, and adjustment disorder," conditions

that required multiple psychiatric hospitalizations and medication to manage her mental illness. N.T. at 23. Mother's attempt to minimize her failure to address her mental health issues does not persuade us that termination was improper.

Although Mother blames CYF for her failure to meet her established goals, our Supreme Court has emphasized that neither the relevant provisions of Section 2511 of the Adoption Act nor the pertinent provision in Section 6351 of the Juvenile Act (42 Pa.C.S. § 6351) with respect to dependency review hearings require a court to consider the reasonable efforts provided to a parent by the petitioning agency prior to termination of parental rights. *In the Interest of: D.C.D., a Minor*, 629 Pa. 325, 343-348, 105 A.3d 662, 673-675, 676 (2014) (holding that nothing in the language or purpose of the Adoption Act nor the Juvenile Act prevents a trial court from granting of a petition to terminate parental rights, as a consequence of the agency's failure to provide reasonable efforts to a parent).

Accordingly, our review of the record supports the trial court's conclusion that termination of Mother's parental rights was proper under Section 2511(a)(1). As noted above, this Court need only agree with the trial court's decision to terminate parental rights under one subsection of Section 2511. *See In re B.L.W., supra*.

Mother also argues that the trial court erred in finding that DHS presented credible evidence that the termination of Mother's parental rights would not have a detrimental impact on Child, as she questions whether DHS performed a proper evaluation of Mother's bond with Child pursuant to Section 2511(b). While courts initially focus on the parent's conduct in terminating parental rights under Section 2511(a), our focus shifts to the best interest of the child pursuant to Section 2511(b). *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.Super. 2008) (*en banc*). Under Section 2511(b), we examine whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa.Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). "The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *See id.*

With regard to Mother and Child's relationship, the trial court found that "the testimony established [C]hild does not have a parent/child bond with [M]other." T.C.O. at 5. After supervising Mother's visits with Child, Ms. Allen testified that Mother does not exhibit a parental bond with Child, but instead noted that Child views Mother as a "playmate." N.T. at 19. Ms. Allen opined that Child would not suffer any long-term detrimental effects if

Mother's rights were terminated. *Id.* at 20. Ms. Allen further acknowledged that Mother does love Child, but asserted it is in the best interest of Child for Mother's parental rights to be terminated. *Id. See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa.Super. 2008) (stating that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition).

Moreover, Child has resided in foster care for over three years since he was taken into CYS custody and declared dependent. In the two years prior to the termination hearing, Child resided in kinship care with his paternal great-aunt, who Child refers to as "Mom." N.T. at 19. Ms. Allen found that Child is "thriving and happy" in his preadoptive home. *Id.* at 15, 20. Ms. Allen further testified that Child relies on his paternal great-aunt for all of his basic needs. *Id.* at 14-15. *See In re L.M.*, 923 A.2d 505, 512 (Pa.Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights).

As noted above, we defer to a trial court's determination of credibility, absent an abuse of discretion. *See In re M.G.*, 855 A.2d. at 73-74. We can discern no abuse of discretion in the trial court's determination that Ms. Allen's testimony was credible. We find that the trial court gave adequate consideration to the developmental, physical, and emotional needs of Child, *i.e.*, his best interest, in determining that Mother's parental rights should be

terminated pursuant to Section 2511(b), and the record supports the trial court's best interest analysis. ***In re C.M.S. supra***.

With the above standard of review in mind, we have thoroughly reviewed the record, the briefs, and the applicable law, and we conclude that the trial court properly exercised its discretion in terminating Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016